**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-01997-CMA-MJW

MARY LESTER,

     Plaintiff,

v.

CITY OF LAFAYETTE, COLORADO,

     Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

In this employment discrimination case, Plaintiff Mary Lester alleges that she was discriminated against by Defendant City of Lafayette, Colorado ("the City") because of her daughter's disability.  Because the undisputed material facts demonstrate that Ms. Lester cannot establish her claims, this Court grants summary judgment in the City's favor.

## I.  BACKGROUND

Ms. Lester worked as the City's Senior Services Center Manager until her termination on July 10, 2012.  (Doc. ## 66, ¶ 1; 72, ¶ 1.)  Ms. Lester's direct supervisor was Mr. Cheesman.  (Doc. ## 66, ¶ 2; 72, ¶ 2.)  In 2007, some City employees learned that Ms. Lester's daughter was diagnosed with bipolar disorder.  (Doc. ## 66, ¶ 4; 72, ¶ 4.)

In July 2011, Mr. Cheesman reprimanded Ms. Lester for her conduct when City police officers were called to her home due to a property dispute with her daughter. (Doc. ## 66, ¶ 4, 5; 72, ¶ 4, 5.)  According to officers, Ms. Lester was "very uncooperative" and threatened to sue.  (Doc. # 66-4 at 1.)  Ms. Lester admitted that she was loud and threatened to sue the officers, but explained that she did so because she asked the officers to close her gate so that her dogs did not get out, the officers failed to do so, and her two dogs got out of her yard.  (Doc. # 72-1 at 3.)  Mr. Cheesman reprimanded Ms. Lester for her failure to adhere to City Policy, including "conduct unbecoming to a City employee"; rudeness, insolence, or offensive behavior by a City employee; and "any conduct that . . . brings disrepute upon or compromises the integrity of the City."  (Doc. # 66-4 at 1.)

Ms. Lester was the sole point of contact for the Senior Center flooring project, which required her to obtain bids, correspond with vendors, order products, and oversee installation.  (Doc. ## 66, ¶ 21; 72, ¶ 21.)  In May 2011, Ms. Lester contacted Troy Von Roenn, owner of TVR Tiles, but also a subcontractor and installer for Carpet One, to obtain an estimate for the project.  (Doc. ## 66, ¶ 27; 72, ¶ 27.)  Ms. Lester's husband had known Mr. Von Roenn for approximately ten years and spent time with him socially. Mr. Van Roenn provided an estimate based on Carpet One's material and labor costs. (Doc. ## 66, ¶ 22, 27; 72, ¶ 22, 27.)  In October 2011, Ms. Lester solicited a bid from Carpet One for the flooring project.  (Doc. ## 66, ¶ 28; 72, ¶ 28.)  In December 2011, Ms. Lester solicited a bid from Mr. Van Roenn on behalf of TVR Tiles.  (Doc. ## 66, ¶ 29; 72, ¶ 29.)

On December 7, 2011, before City Council had reviewed the bids or awarded the project to either vendor, Ms. Lester emailed Carpet One directing that product be ordered.  (Doc. ## 66, ¶ 34; 72, ¶ 34.)  Ms. Lester admitted that this was bad practice, that it was not in compliance with policy to order the product before City Council had voted, and that she did not have authority to make a decision on which vendor to use because City Council needed to make that decision.  (Doc. ## 66, ¶ 35; 72, ¶ 35.)  By at least December 29, 2011, Ms. Lester knew that, if Carpet One was awarded the project, Mr. Van Roenn would perform the installation.  (Doc. ## 66, ¶ 36; 72, ¶ 36.)  Ms. Lester admits that Mr. Van Roenn would materially benefit from both bids; however, she did not inform Mr. Cheesman or Gary Klaphake, the City Administrator, of that fact.  (Doc. ## 66, ¶ 37; 72, ¶ 37.)  At some point, Ms. Lester obtained a third bid from Hunter Floor and Window Covering.  (Doc. ## 72-23.)

During Ms. Lester's tenure, the City had a Policy Manual in place, which includes a purchasing policy that, for projects costing over $7,499, three bids must be obtained and presented to City Council for approval.  The cost of the Senior Center flooring project was over $10,000; therefore, City Council approval was required for this project. (Doc. ## 66, ¶ 24; 72, ¶ 24.)  Nonetheless, Ms. Lester asserts that she followed Section 44-45 of the Municipal Code instead of the Policy Manual.  (Doc. ## 66, ¶ 25; 72, ¶ 25.) On July 10, 2012, Ms. Lester received a notice of termination, stating that her employment was terminated for violations of the City's bidding/purchasing policy and bid rigging, or at least the appearance of bid rigging.  (Doc. ## 66, ¶ 41; 72, ¶ 41.)

Ms. Lester also alleges that Mr. Cheesman discriminated against her because her daughter was covered by her health insurance.  However, she admits she has no idea how much, if anything, her daughter cost the City in insurance expenses.  She also has no idea how much her daughter's medical expenses cost in comparison to other employees and their covered family members. (Doc. ## 66, ¶ 15; 72, ¶ 15.)

On July 26, 2013, Ms. Lester filed the instant action, alleging she was terminated because of her association with a disabled person, her daughter.  (Doc. # 1.)  The City moved for summary judgment, which is ripe for this Court's review.  (Doc. ## 66, 72, 78.)

## II.  STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*  However, conclusory statements based merely on conjecture, speculation, or subjective beliefs do not constitute competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a

4

genuine dispute of material fact and entitlement to judgment as a matter of law.  *Id.*  In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point the Court to a lack of evidence for the other party on an essential element of that party's claim.  *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.  *Id.*  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Id.*

### III.  ANALYSIS

## A.   AMERICANS WITH DISABILITIES ACT ("ADA") CLAIM

The ADA provides, in pertinent part, that covered employers shall not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Disability discrimination includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to

have a relationship or association." *Id.* at § 12112(b)(4).  This prohibition is known as

the "association provision" of the ADA.  *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1154 (10th

Cir. 2008) (citing *Den Hartog v. Wasatch Acad.,* 129 F.3d 1076, 1082 (10th Cir. 1997)).

"A family relationship is the paradigmatic example of a 'relationship' under the

association provision of the ADA."  *Den Hartog,* 129 F.3d at 1082 (citing 29 C.F.R. §

1630.8).  Ms. Lester's relationship to her daughter is protected by the association

provision.

Ms. Lester must satisfy the four elements of a prima facie case of ADA

association discrimination:  (1) she was "qualified" for the job at the time of the adverse

employment action; (2) she was subjected to adverse employment action; (3) she was

known by her employer at the time to have a relative or associate with a disability; (4)

the adverse employment action occurred under circumstances raising a reasonable

inference that the disability of the relative or associate was a determining factor in the

employer's decision.  *Id.* at 1085.  Once Ms. Lester meets this burden, under the familiar

*McDonnell Douglas* burden shifting framework, the burden shifts to the City to proffer a

legitimate, non-discriminatory reason for terminating the her employment.  *Id.*  If the City

does so, the burden shifts back to Ms. Lester to provide evidence that the legitimate

reasons offered by the City were merely a pretext for discrimination.  *Texas Dept. of*

*Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  At this stage, the Court considers

evidence establishing the prima facie case and "inferences properly drawn therefrom . .

. on the issue of whether the defendant's explanation is pretextual."  *Reeves v.*

*Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S.

6

at 255 n. 10).

The Court finds that Ms. Lester has not established a prima facie case of disability discrimination because she cannot show that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of her daughter was a determining factor in her employer's decision to terminate her.  Relying on *Trujillo v. PacifiCorp*, 524 F.3d 1149 (10th Cir. 2008), the City argues that Ms. Lester cannot establish this prong because she cannot show that the reason for her termination was because of expense, disability by association, or distraction.  Ms. Lester responds that "the [Tenth] Circuit has not specifically held that [the factors set forth in *Trujillo*] are the only factors" and asserts that her claim falls under the expense and "embarrassment" factors.  (Doc. # 72 at 22.)  However, Ms. Lester fails to cite any case law for the proposition that "embarrassment" is sufficient to establish that the disability of the relative or associate was a determining factor in the employer's decision.  A lack of case law would not necessarily be fatal to Ms. Lester's argument, if she developed how "embarrassment" is sufficient to establish this prong of a prima facie case of association discrimination.  Ms. Lester has failed to do so.[1]  Therefore, the

---

[1] Essentially, Ms. Lester's assertion that "embarrassment" is sufficient to show that she was terminated because of her daughter's disability is an attempt to shoehorn a claim for association discrimination into the framework for a traditional ADA first-party claim of discrimination.  This attempt fails to appreciate the difference between the two claims.  However, even if this Court were to apply principles from a traditional ADA claim context, Plaintiff's allegation is not sufficient to establish a prima facie case.  Plaintiff appears to argue that Defendant was motivated to terminate her because it was embarrassed by her daughter's disability, as evidenced by a reprimand for an incident with police that Plaintiff claims "was an unfortunate by product of [her] daughter's mental illness . . . ."  However, this incident was only tangentially related to her daughter's disability, if at all.  Instead, by Plaintiff's own admission, her behavior towards the police was motivated by officers leaving her gate open and letting her dogs out of her yard.  She was reprimanded for yelling at officers, not for her daughter's behavior.

Court will focus on whether Ms. Lester has established that her termination was due to the expense of her daughter's health plan.

In *Trujillo*, the Tenth Circuit determined that the plaintiffs raised the necessary reasonable inference of discriminatory motive to establish a prima facie case of association discrimination by alleging that their termination was motivated by the expense of their son's cancer treatment to their company.  524 F.3d at 1156.  The Trujillos were fired from their jobs within six weeks of their son's cancer relapse, during which, his medical bills exceeded $62,000.  *Id.* at 1151-52.  The court observed, "the Trujillos offered everything from evidence of general concerns about the rising cost of healthcare to the specific facts that [their son's] claims were considered high dollar, that there was only one other terminal illness during the relevant time period, and that [the company] was keeping tabs on those claims."  *Id.* at 1156.  The court also noted the close temporal proximity between the Trujillos' son's relapse and their terminations.  *Id.* at 1157.

In the instant case, Ms. Lester has presented no evidence that the City was tracking the cost of her and her daughter's health care or that her daughter's care was unusually or particularly expensive.  Instead, Ms. Lester merely states, "In 'all city' meetings, with [Human Resources] managers and Cheesman present, statements were

---

Moreover, the undisputed facts show that she failed to follow Defendant's bidding and purchasing policy, which was a legitimate, non-discriminatory reason for her termination.  The Court is not persuaded that Plaintiff has demonstrated that there are disputed material facts showing this reason was pretexual, particularly given that the incident with the police took place a year prior to her termination, whereas Defendant discovered she manipulated the bidding process just months before she was terminated.

made by managers of the importance of the the City's Employee Wellness Program in lowering insurance premiums (that were associated with chronic conditions) and exhortations were made that employees should sign up." (Doc. # 72 at 23.)  The Court disagrees that this is sufficient to raise the inference that the City took actions against Ms. Lester because of the expense of her daughter's illness.  To hold otherwise would potentially open up any city or business to liability for adopting and encouraging employee wellness programs as a means for lowering health care costs.

Ms. Lester also argues that close temporal proximity between her daughter's inpatient treatment for bipolar disorder and Ms. Lester's termination demonstrates that she has established a prima facie case of discrimination.  Although *Trujillo* discussed the importance of temporal proximity, 524 F.3d at 1157, this Court is not persuaded that this sole inference is sufficient to demonstrate that the City had a discriminatory motive in terminating Ms. Lester's employment.  This is particularly true when she has not put forth any evidence that the City is self-insured or that her daughter's medical bills or insurance premiums were particularly expensive.  Moreover, the undisputed facts show that some City employees became aware of Ms. Lester's daughter's diagnosis in 2007, five years prior to her discharge; yet, Ms. Lester has asserted no facts showing, for instance, that the cost to the City for her daughter's health care increased.  Without additional evidence, Ms. Lester asks this Court to rely on her speculation of discrimination, which it cannot do.  *See Bones*, 366 F.3d at 875.

## B.    REHABILITATION ACT CLAIM

Under the Rehabilitation Act, a plaintiff must show the employment

discrimination occurred "solely by reason of her or his disability."  29 U.S.C. § 794(a) (Supp.1993); *Bentley v. Cleveland Cnty. Bd. of Cnty. Comm'rs*, 41 F.3d 600, 605 (10th Cir. 1994).  The City moves for summary judgment, arguing that Ms. Lester "cannot prove her termination was based solely on her daughter's alleged disorder."  (Doc. # 66 at 20.)  Ms. Lester responds in a single paragraph with a single citation to *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), a case which does not even address the Rehabilitation Act.  Thus, Ms. Lester has not "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671.  Moreover, given the City's legitimate, nondiscriminatory reason for her termination, the Court finds that the undisputed material facts show that Ms. Lester cannot establish that her daughter's disability was the sole reason for the alleged discrimination.

## IV.  CONCLUSION

Ms. Lester has not shown that there exists a genuine dispute of material fact for trial on any of her claims and, therefore, the City is entitled to summary judgment.

Accordingly, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. # 66) is GRANTED.  It is

FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE.  The Final Trial Preparation Conference set for March 13, 2015, and the five-day Jury Trial set to commence on March 23, 2015, are VACATED.  It is

FURTHER ORDERED that all other pending motions are DENIED AS MOOT.  It is

FURTHER ORDERED that Defendant shall have its costs by the filing of a Bill of Costs with the Clerk of the Court within ten days of the entry of judgment.  Each party shall bear its own attorney fees.

DATED:  February 27, 2015

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge